Rachel Seaton Brownell (N.J. Bar No. 021842011)
Jillian L. Szymonifka (N.J. Bar No. 114492014)
**LITTLER MENDELSON, P.C.**
One Newark Center, Eighth Floor
Newark, New Jersey  07102
973.848.4700
Attorneys for Defendant

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BETSY FRESSE, <br><br>                  Plaintiff, <br><br> vs. <br><br> STARBUCKS CORPORATION d/b/a, <br> STARBUCKS COFFEE COMPANY <br><br>                  Defendant. | Civil Action No. 2:20-cv-16567-MCA-LDW <br><br> <u>**Electronically Filed**</u> <br><br><br> **Motion Date: April 5, 2021** |

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY THE ACTION

---

**LITTLER MENDELSON, P.C.**
One Newark Center, 8th Floor
Newark, New Jersey 07102

On the Brief:
    Rachel Seaton Brownell, Esq.
    Jillian L. Szymonifka, Esq.

TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ............................................................1

STATEMENT OF FACTS.................................................................2

I.     STARBUCKS REQUIRES NEW HIRES TO ARBITRATE EMPLOYMENT
       RELATED CLAIMS ..............................................................2

II.    PLAINTIFF APPLIES FOR EMPLOYMENT WITH STARBUCKS. ...........................3

III.   PLAINTIFF SIGNS THE ARBITRATION AGREEMENT AND AGREES TO
       ARBITRATE ALL EMPLOYMENT RELATED DISPUTES WITH
       STARBUCKS ...................................................................3

IV.    PLAINTIFF COMMENCES EMPLOYMENT WITH STARBUCKS ..........................6

V.     PLAINTIFF COMMENCES THE INSTANT LAWSUIT IN VIOLATION OF
       HER AGREEMENT TO ARBITRATE ...............................................7

LEGAL ARGUMENT ...................................................................7

I.     THERE IS A STRONG FEDERAL AND STATE PUBLIC POLICY IN FAVOR
       OF ARBITRATION ..............................................................7

II.    THE ARBITRATION AGREEMENT IS ENFORCEABLE UNDER THE FAA
       AND NEW JERSEY LAW.........................................................10

       A.     A Valid Arbitration Agreement Exists...............................10

       B.     Plaintiff Agreed To Arbitrate Claims Arising From Her Employment With
              Starbucks ........................................................15

III.   SINCE PLAINTIFF HAS AGREED TO ARBITRATE HER CLAIMS, THE
       COURT SHOULD COMPEL ARBITRATION AND DISMISS THE
       COMPLAINT OR STAY THE ACTION. ...........................................16

CONCLUSION.......................................................................17

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alford* v. *Dean Witter Reynolds, Inc.*,
    975 F.2d 1161 (5th Cir. 1992) ........................................................................................16

*In re Arbitration Between Grover & Universal Underwriters Ins. Co.*,
    80 N.J. 221 (1979)..........................................................................................................15

*Armstead v. Starbucks Corp.*,
    No. 17-CV-1163(PKC), 2017 WL 5593519 (S.D.N.Y. Nov. 17, 2017)...............................10

*AT&T Mobility LLC v. Concepcion*,
    131 S. Ct. 1740 (2011) ...............................................................................................7, 8

*Atalese v. U.S. Legal Servs. Grp., L.P.*,
    219 N.J. 430 (2014)..........................................................................................................9

*Barcon Assoc., Inc. v. Tri-Cnty Asphalt Corp.*,
    86 N.J. 179 (1981)............................................................................................................9

*Bd. of Educ. of Bloomfield v. Bloomfield Educ. Ass'n*,
    251 N.J. Super. 379 (App. Div. 1990), *aff'd*, 126 N.J. 300 (1991).......................................10

*Circuit City Stores, Inc. v. Adams*,
    532 U.S. 105 (2001) .........................................................................................................8

*Curtis v. Cellco P'ship*,
    413 N.J. Super. 26 (App. Div.), *certif. den.* 203 N.J. 94 (2010)............................................12

*Czormoor v. T-Mobile USA, Inc.*,
    354 F. App'x 972 (6th Cir. 2009) ....................................................................................16

*Epic Sys. Corp. v. Lewis*,
    138 S. Ct. 1612 (2018) ...............................................................................................7, 8

*First Options of Chicago, Inc. v. Kaplan*,
    514 U.S. 938 (1995) .......................................................................................................10

*Forsyth v. First Trenton Indem. Co.*,
    No. L-9185-08, 2010 WL 2195996 (App. Div. May 28, 2010) ............................................12

*Garfinkel v. Morristown Obstetrics & Gynecology Assocs.*,
    168 N.J. 124 (2001)......................................................................................................9, 10

*Gilmer v. Interstate/Johnson Lane Corp.*,
500 U.S. 20 (1991) ............................................................................................9

*Gomez v. Rent-A-Center, Inc.*,
Civ. No. 2:18-cv-1528-KM-SCM, 2018 U.S. Dist. LEXIS 114910 (D.N.J.
July 10, 2018)...................................................................................................14

*Hernandez v. Starbucks Corp.*
(Superior Court of California County of Ventura Division July 26, 2018)..........10

*Hoffman v, Fidelity & Deposit Co.*,
734 F. Supp. 192 (D.N.J. 1990) ........................................................................16

*Horne v. Starbucks Corp.*,
No. 2:16-CV-02727-MCE-CKD, 2017 WL 2813170 (E.D. Cal. June 29,
2017)................................................................................................................10

*Jansen v. Salomon Smith Barney*,
342 N.J. Super. 254 (App. Div.), *certif. denied*, 170 N.J. 205 (2001) ..................15

*Jaworski v. Ernst & Young U.S., LLP*,
441 N.J. Super. 464 (App. Div. 2015)...............................................................13

*Jayasundera v. Macy's Logisitics & Operations, Dep't of Human Res.*,
No. 14-CV-7455 SDW SCM, 2015 WL 4623508 (D.N.J. Aug. 3, 2015).............12

*Johnson v. Starbucks Corp.*,
No. 2:17-CV-01718-KJM-KJN, 2019 WL 2208440 (E.D. Cal. May 22, 2019) ..................10

*Leodori v. CIGNA Corp.*,
175 N.J. 293 (2003)......................................................................................9, 11

*Martindale v. Sandvik, Inc.*,
173 NJ. 76 (2002)........................................................................................9, 11

*McKeeby v. Arthur*,
7 N.J. 174 (1951)................................................................................................9

*Moreira Constr. Co. v. Twp. of Wayne*,
98 N.J. Super. 570 (App. Div.), *certif. denied*, 51 N.J. 467 (1968) ......................10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) ..............................................................................................8

*Opalinski v. Robert Half Int'l, Inc.*,
761 F.3d 326 (3d Cir. 2014) .............................................................................10

*Ricci v. Sears Holding Corp.*,
    No. 14-3136 RMB/JS, 2015 U.S. Dist. LEXIS 7617 (D.N.J. Jan. 23, 2015).........................11

*Rudbart v. Water Supply Comm'n*,
    127 N.J. 344, *cert. denied*, 506 U.S. 871 (1992)...................................................14

*Sheet Metal Workers Int'l. Ass'n Local Union No. 27, AFL-CIO v. E.P. Donnelly, Inc.*,
    673 F. Supp. 2d 313 (D.N.J. 2009) ...................................................................14

*Simon v. Starbucks Corp.*,
    No. MSC19-01170 (Superior Ct. of California County of Contra Costa Dec. 17, 2020)...........................................................................................................10

*Skuse v. Pfizer, Inc.*,
    244 N.J. 30 (N.J. 2020)............................................................................ 2, 12, 14

*Southland Corp. v. Keating*.
    465 U.S. 1 (1984)............................................................................................8

*U.S. Auto. Ass'n v. Turck*,
    156 N.J. 480 (1997)......................................................................................9, 15

*Wilson v. Starbucks Corp.*,
    385 F.Supp.3d 557 (E.D. Ky. 2019).................................................................10

**Statutes**

15 U.S.C. § 7001(a)(1) ..................................................................................11

Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 to 16 ........................................*passim*

N.J.S.A. 12A:12-7(a), (d) ..............................................................................11

Revised Uniform Arbitration Act ("RUAA"), N.J.S.A. 2A:23B-1 *et seq.* ..................................9

## PRELIMINARY STATEMENT

Because Plaintiff Betsy Fresse ("Plaintiff" or "Fresse") has refused to honor her agreement to arbitrate, Defendant Starbucks Corporation ("Starbucks" or "Company") brings this motion, pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1 to 16 ("FAA"), to compel Plaintiff to arbitrate her claims under the terms of the parties' mutual arbitration agreement, and to dismiss the Amended Complaint or, in the alternative, stay the action.[1]  As a mandatory term and condition of her employment with Starbucks, of which Plaintiff was advised both before and while completing her application for employment, Plaintiff agreed to submit all claims relating to her employment to arbitration per Starbucks' Mutual Arbitration Agreement ("Arbitration Agreement").  After repeatedly agreeing to engage in employment-related electronic transactions, Plaintiff indicated her assent to this Agreement electronically, via a two-step process during her new employee onboarding, which required her to first view the Arbitration Agreement and then electronically acknowledge her acceptance of the Agreement.  She was invited to print a copy of the Arbitration Agreement for her records twice, once during her onboarding, and once more via an automatically-generated email sent to her by the Company's system once it received her signed agreement.  Given the foregoing, Plaintiff clearly and unmistakably knowingly assented and agreed to the terms of the Arbitration Agreement.

This Agreement expressly advises Plaintiff in bold lettering that she is "waiv[ing] the right to a trial before a judge or jury in federal or state court" and details the arbitration processes and procedures from inception to conclusion of the matter.  The three-page Arbitration Agreement explicitly covers any claims "brought under any statute…relating to [Plaintiff's] employment,

---

[1] The parties' Arbitration Agreement governs any claims relating to Plaintiff's employment against Starbucks.  A true and correct copy of the parties' Mutual Arbitration Agreement is attached as **Exhibit G** to the Declaration of Matthew Kennedy in Support of Defendant's Motion to Compel Arbitration and Dismiss or Stay the Action ("Kennedy Decl.").

including those concerning any element of . . . discrimination . . . accommodations, or termination of employment." It cannot be disputed that Plaintiff agreed to arbitrate, not litigate, the instant matter.

The United States Supreme Court affirmed that employment arbitration agreements are to be enforced according to their terms, under the FAA. Courts in this State and across the nation, at both the state and federal level, routinely enforce arbitration agreements like the one to which Plaintiff agreed. In fact, Courts across the country have upheld the same Arbitration Agreement at issue in this case. Further, in *Skuse v. Pfizer*, the New Jersey State Supreme Court recently held that electronically presented and signed agreements, such as the Starbucks agreement at issue here, must be strictly enforced according to their terms.

Accordingly, this Court should enforce the Arbitration Agreement as written and dismiss Plaintiff's Amended Complaint or, in the alternative, stay the action.

## STATEMENT OF FACTS

**I.    Starbucks Requires New Hires to Arbitrate Employment Related Claims.**

On or about October 1, 2014, Starbucks implemented a requirement that, as a condition of employment, all new hires must agree to arbitrate any claims arising out of their employment. (Declaration of Matthew Kennedy ("Kennedy Decl."), ¶ 5.) All applicants are informed of this condition of employment when they complete an online application for employment. *(Id.)*

From October 1, 2014 until May 2017, applicants for retail, non-managerial jobs, applied through Starbucks' Retail Hourly Hiring ("RHH") online application process, which was accessible at http://www.starbucks.com/careers/working-at-starbucks and http://www.starbucks.com/careers/retail-careers. (Kennedy Decl., ¶ 6.)

## II.      Plaintiff Applies for Employment with Starbucks.

On or about November 4, 2015, Plaintiff submitted an online application for employment with Starbucks via the RHH online application portal. (Kennedy Decl., ¶7.)  On the first page of the online application process, Plaintiff was required to create an account by providing her first name, last name, and email address and by selecting a unique username and password that was known only to Plaintiff.  (*Id.*).  Plaintiff could not continue with the online application process without creating an account with a unique username and password known only to her.  (*Id.*).

After Plaintiff created her account with a unique username and password, she was directed to the "Pre-Application Disclosures" page, through which she was advised: "It is Starbucks policy that after October 1, 2014, all new hires shall be subject to an arbitration agreement as a condition of employment." (Kennedy Decl., ¶ 8, Ex. B.)  In order to continue her application, Plaintiff expressly agreed that she "consent[ed] to receive and respond to information in electronic form", including "a number of disclosures and consent forms which usually are provided in written form." (Kennedy Decl., ¶¶ 8, 9, Exs. B, C.)  After reading those provisions, Plaintiff had the option to consent to receive and respond to notices in electronic form or to cancel the online application. (Kennedy Decl., ¶ 8, Ex. B.)  To move to the next screen in the RHH online application process, Plaintiff was required to click on the button at the bottom of the "Pre-Application Disclosures" page stating, "I consent to receive and respond to notices in electronic form."  (*Id.*).

Plaintiff was once again notified within the employment application itself that she completed that she would be subject to an arbitration agreement as a condition of her employment. (Kennedy Decl., ¶ 9, Ex. C.)  Plaintiff agreed to the foregoing and submitted her application on November 4, 2015.  (*Id.*).

## III.     Plaintiff Signs the Arbitration Agreement and Agrees to Arbitrate All Employment Related Disputes with Starbucks.

After Plaintiff received an offer of employment, but before she began working at Starbucks,

3

Plaintiff was required to complete the RHH online "Employee Onboarding". (Kennedy Decl., ¶ 11.) On December 3, 2015, Plaintiff logged onto her account and began the onboarding process. (*Id.*) After logging in, for the second time, Plaintiff had the option to consent (or not consent) to receive and respond to information electronically. (*Id.*) Plaintiff once again consented to "give consent to receive and respond to information in electronic form" through clicking on the provided box. (*Id.*) Had Plaintiff not so agreed, she would not have been able to proceed with the RHH onboarding process. (*Id.*) Although Plaintiff had the option to consent to receive and respond to notices in electronic form, or to decline and cancel the onboarding process, Plaintiff continued with the onboarding process. (*Id.*)

At the conclusion of the onboarding process, Plaintiff arrived at the "e-Signature Acceptance" page. (Kennedy Decl., ¶ 12.) The "e-Signature Acceptance" page states:

> **. . . I intend both the signature I inscribe with the "click" signature technology and the electronic record of it to be my legal signature to the document. I confirm that the document is "written" or "in writing" and that any accurate record of the document is an original of the document. I agree to use the electronic click as my "written" signature, which will be electronically inscribed on the PDF document.**

(Kennedy Decl., ¶ 12, Ex. E.) Before moving to the next screen in the RHH onboarding process, Plaintiff was required to click on a box stating "Check here to agree." (Kennedy Decl., ¶ 12.) As Plaintiff continued with the onboarding process, it is apparent that she clicked on the box indicating her agreement to the use of electronic signatures and documents. (Kennedy Decl., ¶¶ 12, 13.)

Following her agreement to electronically sign her onboarding documents, Plaintiff was directed to the "e-Sign Forms" page, where Plaintiff was required to sign various forms. (Kennedy Decl., ¶ 13, Ex. F.) The "e-Sign Forms" page provides:

> **The following forms require your electronic signature . . . . You must read each form before signing it . . . . Each form contains an attestation and/or declaration that you must make by signing the form. You sign each form by clicking the "Sign" link associated with that form.**

4

> **Throughout these web pages on electronic signature, you may click on view links that are underlined and an Adobe PDF file version of a document or form will open for your review. You may also print these documents.**

(*Id.*)

One such form presented on this page was Starbucks' Arbitration Agreement. (*Id.*)  The three-page Agreement expressly details at the very outset:

> <u>Mutual Agreement to Arbitrate</u>.  Starbucks and I agree to use binding individual arbitration to resolve any "Covered Claims" that arise between me and Starbucks….  "Covered Claims" are those brought under any statute, local ordinance or common law relating to my employment, including those concerning any element of compensation, harassment, discrimination, retaliation, recovery of bonus or relocation benefits, leaves of absence, accommodations or termination of employment.
>
> **Except as provided herein, I understand and agree that arbitration is the only forum for resolving Covered Claims, and that both Starbucks and I waive the right to a trial before a judge or jury in federal or state court.**  The Arbitrator shall have the authority to award the same damages and other relief that would have been available in court pursuant to applicable law.
>
> Except as provided below, Starbucks and I agree that the Arbitrator, and not a court or agency, shall have exclusive authority to resolve any dispute regarding the formation, interpretation, applicability, enforceability, or implementation of this Agreement, including any claim that all or part of this Agreement is void or voidable.

(Kennedy Decl., Ex. G, at p. 1.) (emphasis in original)  The Agreement further details arbitration processes and procedures, including initiation, discovery, and outcome.[2] (Kennedy Decl., Ex. G,

---

[2] Under the Arbitration Agreement, Plaintiff may bring a Covered Claim by paying a filing fee "equivalent to the current filing fee applicable in state court where [she] reside[s], up to a maximum of $225." (Kennedy Decl., Ex. G, at p. 2.) The arbitration is conducted pursuant to the National Rules for the Resolution of Employment Disputes of the American Arbitration Association ("AAA") at a location in the state where Plaintiff worked. (Kennedy Decl., Ex. G, at p. 2.) All arbitrator and administrative fees are paid by Starbucks. (Kennedy Decl., Ex. G, at p. 2.) Each party may serve a limited number of interrogatories and document requests, and may conduct depositions, subject to the arbitrator's authority to permit additional discovery as needed. (Kennedy Decl., Ex. G, at p. 2.)  Arbitral awards must be issued within 30 days following the conclusion of the hearing. (Kennedy Decl., Ex. G, at p. 2.)

at p. 2.)  The Agreement also provides that the Arbitrator has the same authority to order remedies (including emotional distress damages, punitive damages and equitable relief) as would a court of competent jurisdiction.  (*Id*.)

Plaintiff viewed the Arbitration Agreement, and then signed it at 10:19 a.m. on December 3, 2015. (Kennedy Decl., ¶¶ 14, 16; Exs. F, H.)  It is apparent that Plaintiff viewed the document because she could not electronically sign the Arbitration Agreement until she clicked the "View" button so she could first review the Arbitration Agreement. (Kennedy Decl., ¶ 14, Ex. F.)[3]  After Plaintiff signed the Agreement, the RHH system automatically generated an email to the email address that Plaintiff provided when she set up her account with her unique username and password (B.fresse@yahoo.com), which confirmed for Plaintiff that she had signed the Arbitration Agreement. (Kennedy Decl., ¶ 16, Ex. I.)  The confirmation email contained a copy of the Arbitration Agreement for Plaintiff's records. (Kennedy Decl., ¶ 16.)

Finally after electronically signing the Arbitration Agreement and other required forms, Plaintiff arrived at the "Printed Forms Acceptance" page, which again gave Plaintiff the opportunity to print the Arbitration Agreement for her records.  (Kennedy Decl., ¶ 17.)

**IV.    Plaintiff Commences Employment with Starbucks.**

Shortly after Plaintiff completed the RHH onboarding and electronically signed the Arbitration Agreement, Plaintiff commenced employment with Starbucks as a barista in December 2015. (Kennedy Decl., ¶ 18.)  She worked for Starbucks at locations in Hoboken and Glen Ridge, New Jersey until Starbucks terminated her employment on August 22, 2019 for violating its Core Values, specifically those pertaining to inclusion and diversity. (Am. Compl., ¶¶ 20, 25, 32, 33.)

---

[3] A "Sign" link does not appear next to the "View" link until the user opens and views the Arbitration Agreement. (Kennedy Decl., ¶ 12.)  The "Sign All" link also cannot be clicked until the user opens and views the Arbitration Agreement. (*Id.*)  The "Onboarding" tab in Plaintiff's RHH file could not indicate that she electronically signed the Arbitration Agreement unless Plaintiff clicked on the "Sign" link next to the Arbitration Agreement or the "Sign All" link below the Arbitration Agreement while logged in to RHH. (Kennedy Decl., ¶ 14.)

## V. Plaintiff Commences the Instant Lawsuit in Violation of Her Agreement to Arbitrate.

Despite Plaintiff's agreement to arbitrate all disputes arising out of her employment with Starbucks, Plaintiff filed the instant lawsuit on November 19, 2020, and then filed an Amended Complaint on January 11, 2021, alleging religious discrimination claims under Title VII based on Starbucks' decision to terminate Plaintiff and its alleged failure to accommodate her religious beliefs. (*See* Am. Compl., Dkt. Nos. 1, 6.)

On January 18, 2021, defense counsel advised Plaintiff's counsel of Plaintiff's clear agreement to arbitrate all claims against Starbucks arising out of her employment and provided him with a copy of the 2015 Arbitration Agreement and proof of Plaintiff's electronic signature to same. (Declaration of Rachel Seaton Brownell ("Brownell Decl."), ¶ 2, Ex. A.) Defense counsel further provided a copy of a recent Court decision from the Southern District of New York enforcing Starbucks' Arbitration Agreement and a supporting declaration from that case detailing the process for signing the Arbitration Agreement process. (Brownell Decl., ¶ 6; Ex. C.) Coupled with the foregoing, defense counsel sent repeated requests for Plaintiff to withdraw her Amended Complaint. (Brownell Decl., ¶¶ 3, 5, 7-9; Exs. B, D, E.) However, Plaintiff has refused to do so, thus necessitating the filing of the instant motion.

## LEGAL ARGUMENT

## I. There Is A Strong Federal And State Public Policy In Favor Of Arbitration.

Federal and New Jersey law, as well as public policy, strongly favor arbitration and require enforcement of the Arbitration Agreement between Plaintiff and Starbucks. The Federal Arbitration Act, 9 U.S.C. §§ 1 to 16 ("FAA"), which governs employment-related arbitration agreements, was enacted "in response to widespread judicial hostility to arbitration agreements," *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011) (citation omitted), and establishes a "liberal federal policy favoring arbitration agreements." *Epic Sys. Corp. v. Lewis*,

138 S. Ct. 1612, 1621 (2018) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).  In the FAA, "Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corp. v. Keating.* 465 U.S. 1, 10 (1984).

"[T]he 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'" *AT&T Mobility LLC*, 131 S. Ct. at 1748 (citation omitted); *Epic Sys. Corp.*, 128 S. Ct. at 1621.  Section Two of the FAA mandates that any agreement to settle a dispute by arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  "In line with these principles, courts must place arbitration agreements on equal footing with other contracts and enforce them according to their terms." *AT&T Mobility LLC*, 131 S. Ct. at 1745 (citations omitted); *see Epic Sys. Corp.*, 128 S. Ct. at 1621 ("rigorously to enforce arbitration agreements according to their terms") (internal quotation omitted).  The FAA requires courts to compel arbitration of disputes governed by an arbitration agreement, and pre-empts any countervailing state law.  *See* 9 U.S.C. § 4.  Moreover, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25.  Indeed, the Supreme Court has recognized that "there are real benefits to the enforcement of arbitration provisions." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 122-23 (2001).

In keeping with the liberal federal policy favoring arbitration, the Supreme Court has repeatedly struck down attacks on the enforceability of employment arbitration programs.  *See, e.g., Epic Sys. Corp.*, 128 S. Ct. at 1620 ("Congress has instructed that arbitration agreements like those before us must be enforced as written."); *see also e.g., Circuit City Stores*, 532 U.S. at 122-123 (enforcing arbitration agreement signed during employee's application process with respect

to claims brought under California's anti-discrimination statute); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991).

New Jersey follows the FAA's lead and similarly has a strong public policy favoring arbitration. *See, e.g., Atalese v. U.S. Legal Servs. Grp., L.P.*, 219 N.J. 430, 440 (2014); *Martindale v. Sandvik, Inc.,* 173 NJ. 76, 84-85 (2002); *Garfinkel v. Morristown Obstetrics & Gynecology Assocs.*, 168 N.J. 124, 131 (2001); *Barcon Assoc., Inc. v. Tri-Cnty Asphalt Corp.*, 86 N.J. 179, 186 (1981). The New Jersey Legislature codified its endorsement of arbitration agreements in the Revised Uniform Arbitration Act ("RUAA"), N.J.S.A. 2A:23B-1 *et seq.*, which, similar to the FAA, provides that "[a]n agreement . . . to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable, and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract." N.J.S.A. 2A:23B-6(a). The RUAA, like the FAA, compels the enforcement of agreements to arbitrate such as the arbitration agreement in this case.

Thus, an agreement to arbitrate disputes is enforceable to the same extent as all other contracts under state law and cannot be subjected to more burdensome requirements. *Atalese*, 219 N.J. at 441; *Leodori v. CIGNA Corp.*, 175 N.J. 293, 302 (2003). This is consistent with the New Jersey Supreme Court's long-held view that "[a]n arbitration agreement is a contract, and is subject, in general, to the legal rules governing the construction of contracts." *McKeeby v. Arthur,* 7 N.J. 174, 181 (1951) (citations omitted). Further, as the Supreme Court held in *U.S. Auto. Ass'n v. Turck*, 156 N.J. 480, 486 (1997), "the parties have the right to stand upon the precise terms of their contract." *Id.* at 486 (*quoting Cohen v. Allstate Ins. Co.,* 231 N.J. Super. 97, 100-01 (App. Div. 1989)).

Specifically, state and federal courts in New Jersey have repeatedly held that arbitration agreements requiring the arbitration of employment-related disputes are fully enforceable. *See, e.g., Martindale*, 173 N.J. at 94 (compelling arbitration of New Jersey Family Leave Act and LAD

claims). Moreover, courts across the country have repeatedly upheld Starbucks' arbitration agreement. *See Armstead v. Starbucks Corp.*, No. 17-CV-1163(PKC), 2017 WL 5593519 (S.D.N.Y. Nov. 17, 2017); *Wilson v. Starbucks Corp.*, 385 F.Supp.3d 557 (E.D. Ky. 2019); *Johnson v. Starbucks Corp.*, No. 2:17-CV-01718-KJM-KJN, 2019 WL 2208440 (E.D. Cal. May 22, 2019); *Horne v. Starbucks Corp.*, No. 2:16-CV-02727-MCE-CKD, 2017 WL 2813170 (E.D. Cal. June 29, 2017); *see also* Order Granting Motion to Compel Arbitration and Stay Proceedings, p. 17, *Simon v. Starbucks Corp.*, No. MSC19-01170 (Superior Ct. of California County of Contra Costa Dec. 17, 2020); Tentative Ruling Motion to Compel – Arbitration, p. 1, No. 56-2017-00497449-CU-OE-VTA, *Hernandez v. Starbucks Corp.* (Superior Court of California County of Ventura Division July 26, 2018).

## II.  The Arbitration Agreement Is Enforceable Under The FAA And New Jersey Law.

On a motion to compel arbitration, a court must decide (1) whether the parties have agreed to arbitrate; and (2) what claims the parties have agreed to arbitrate. *See Garfinkel*, 168 N.J. at 132; *see also Opalinski v. Robert Half Int'l, Inc.*, 761 F.3d 326, 331 (3d Cir. 2014) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)), *cert. denied*, 135 S. Ct. 1530 (2015). Whether parties have agreed to arbitrate claims is a question of law for the court. *Bd. of Educ. of Bloomfield v. Bloomfield Educ. Ass'n*, 251 N.J. Super. 379, 383 (App. Div. 1990) ("Whether the parties are contractually obligated to arbitrate a particular dispute is a matter for judicial resolution."), *aff'd*, 126 N.J. 300 (1991); *Moreira Constr. Co. v. Twp. of Wayne*, 98 N.J. Super. 570, 575 (App. Div.) ("[I]t is inescapably the duty of the judiciary to construe the contract to resolve any disagreement of the parties as to whether they have agreed to arbitrate . . . ."), *certif. denied*, 51 N.J. 467 (1968).

### A.  A Valid Arbitration Agreement Exists.

State law contract principles apply when evaluating the validity of an arbitration agreement. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). New Jersey

courts apply basic contract law principles, including concepts of offer, acceptance and consideration, to determine whether a valid arbitration agreement exists. *See Martindale*, 173 N.J. at 87-88. There must be "an explicit, affirmative agreement that unmistakenly reflects the employee's assent" to arbitration. *See Leodori*, 175 N.J. at 303. Such an "explicit, affirmative agreement" exists here.

Here, Plaintiff has indisputably agreed to arbitrate any and all employment-related claims. She was informed before even starting to complete her application for employment that "all new hires shall be subject to an arbitration agreement as a condition of employment." (Kennedy Decl., ¶ 8, Ex. B.) Having been advised of this, she proceeded to complete her employment application. (Kennedy Decl., ¶ 9, Ex. C.) Plaintiff, once again, was advised within the employment application itself, that she would be subject to an arbitration agreement as a condition of her employment. (*Id.*) Plaintiff continued to try to secure employment with Starbucks. (*Id.*) Once hired, Plaintiff participated in an onboarding process, during which she viewed and electronically agreed to be bound by the Arbitration Agreement at 10:19 a.m. on December 3, 2015. (Kennedy Decl., ¶¶ 14, 16; Exs. F, H.) The mechanics of the onboarding process are such that she would not have been able to complete the process or receive the email containing the Arbitration Agreement had she not actually viewed and electronically agreed to be bound by the Agreement. Plaintiff likewise received an automated email from Starbucks containing the Arbitration Agreement after she expressly agreed to its terms. (Kennedy Decl. ¶ 16.)

It is well settled under New Jersey and Federal law that electronic signatures may not be denied legal effect or enforceability simply because of the signature's electronic form. *See* N.J.S.A. 12A:12-7(a), (d); 15 U.S.C. § 7001(a)(1). Courts have routinely held that electronic acknowledgements, including clinking a link or agreement box on a website, are sufficient to demonstrate assent to an arbitration agreement. *See, e.g., Ricci v. Sears Holding Corp.*, No. 14-3136 RMB/JS, 2015 U.S. Dist. LEXIS 7617, at *11-12 (D.N.J. Jan. 23, 2015) (granting

Defendant's Motion to Compel and explaining that "the fact that there was no handwritten 'signature' required is of no moment."); *Forsyth v. First Trenton Indem. Co.*, No. L-9185-08, 2010 WL 2195996 at *6-7 (App. Div. May 28, 2010) (holding "an actual hadnwritten signature is not necessary" and "a party may manifest assent to a contract by clicking a link on a website"); *Curtis v. Cellco P'ship*, 413 N.J. Super. 26, 32 (App. Div.) (finding "Plaintiff's acceptance of [the arbitration agreement] was confirmed by his electronic signature, as well as his activation and use of the wireless phone service plan"), *certif. den.* 203 N.J. 94 (2010); *Jayasundera v. Macy's Logisitics & Operations, Dep't of Human Res.*, No. 14-CV-7455 SDW SCM, 2015 WL 4623508, at *4 (D.N.J. Aug. 3, 2015) (granting motion to compel arbitration where plaintiff electronically signed the acknowledgment form).

Indeed, the New Jersey Supreme Court recently affirmed the electronic presentation and acceptance of arbitration agreements in the employment context. In *Skuse v. Pfizer, Inc.*, 244 N.J. 30 (N.J. 2020), the Supreme Court upheld an arbitration agreement and compelled arbitration of plaintiff's discrimination claims where the arbitration agreement was conveyed to her via email and to which she manifested assent by electronically clicking a button that said "CLICK HERE to acknowledge". *Id.* at 37-38. The Court affirmed that the electronic presentation of the Agreement would not nullify it, even where Plaintiff claimed that she did not review the communications. *Id.* at 53-54. The Court stated that "one who does not choose to read a contract before signing it cannot later relieve himself of his burdens", and opined that the onus was on plaintiff to obtain a copy of the contract in a timely manner to ascertain what rights she waived by beginning the arbitration process. *Id.* at 54.

Here, Plaintiff repeatedly agreed to receive and respond to information in electronic form and that the electronic signature that she inscribed with the "click" signature technology on the Arbitration Agreement and the electronic record of it would constitute her "legal signature." (Kennedy Decl., ¶¶8, 9, 11, 12; Exs. B, C, D, E.) *Skuse* makes clear that Plaintiff cannot disavow

her acquiescence to the agreement simply because Starbucks presented the agreement electronically and Plaintiff electronically manifested her intent to be bound by the agreement with an electronic acknowledgment. Plaintiff cannot claim that she did not clearly and unmistakably waive her right to proceed in Court with the current action when she was advised before and during the application process that her employment was conditioned on her acceptance of the mutual agreement to arbitrate, and where she was required to manifest her assent to the agreement in a two-step process, requiring that she view and then electronically sign the document. (*See* Kennedy Decl., ¶¶ 8, 9, 14, 16; Exs. B, C, F, H.) Nor can Plaintiff disavow the binding effect of her electronic signature when she repeatedly consented to receive and respond to information in electronic form (which she was expressly advised to review), and acknowledged that her electronic signature constituted her legal signature. (*See* Kennedy Decl., ¶¶ 8, 9, 12, 13; Exs. B, C, E, F.) To argue otherwise is a waste of judicial time and resources.

The Arbitration Agreement itself contains all of the requisite language necessary to create a valid and enforceable arbitration agreement. Specifically, it contains a clear waiver of rights, in bold typeface, to have a trial before a judge or jury in federal or state court for both the employee and the employer. (*See* Kennedy Decl., Ex. G at p. 1); *Jaworski v. Ernst & Young U.S., LLP*, 441 N.J. Super. 464, 481 (App. Div. 2015). Indeed, the Arbitration Agreement provides:

> <u>Mutual Agreement to Arbitrate</u>. Starbucks and I agree to use binding individual arbitration to resolve any "Covered Claims" that arise between me and Starbucks…. "Covered Claims" are those brought under any statute, local ordinance or common law relating to my employment, including those concerning any element of compensation, harassment, discrimination, retaliation, recovery of bonus or relocation benefits, leaves of absence, accommodations or termination of employment.
>
> **Except as provided herein, I understand and agree that arbitration is the only forum for resolving Covered Claims, and that both Starbucks and I waive the right to a trial before a judge or jury in federal or state court.** The Arbitrator shall have the authority to award the same damages and other relief that would have been available in court pursuant to applicable law.

13

> Except as provided below, Starbucks and I agree that the Arbitrator, and not a court or agency, shall have exclusive authority to resolve any dispute regarding the formation, interpretation, applicability, enforceability, or implementation of this Agreement, including any claim that all or part of this Agreement is void or voidable.

(Kennedy Decl., Ex. G, at p. 1.) (emphasis in original).

Even if Plaintiff were to claim that she did not read the three-page Arbitration Agreement, entitled in large and bold typeface reading "**STARBUCKS MUTUAL ARBITRATION AGREEMENT**", or know what she was signing, she was on notice as to its existence, and was presented with the document and invited to print it both via email and at the time of submission during the onboarding process. (*See* Kennedy Decl., Ex. G, ¶¶ 16, 17.)  Any purported failure to read the document to which she affixed her signature, and to whose existence she was repeatedly advised, is of no consequence as to the determination of whether she can be bound by its terms. *See Skuse*, 244 N.J. at 53-54.; *see also Rudbart v. Water Supply Comm'n*, 127 N.J. 344, 353, *cert. denied*, 506 U.S. 871 (1992) ("Absent fraud, an individual who signs an agreement is assumed to have read and understood the legal effect of it, even if she later claims otherwise."); *Gomez v. Rent-A-Center, Inc.*, Civ. No. 2:18-cv-1528-KM-SCM, 2018 U.S. Dist. LEXIS 114910 at *10-11 (D.N.J. July 10, 2018) ("It will not do for a [person] to enter into a contract, and, when called upon to respond to its obligations, to say that [she] did not read it when [she] signed it, or did not know what it contained.") (quoting *Morales v. Sun Constructors, Inc.,* 541 F.3d 218, 221 (3d Cir. 2008)); *Sheet Metal Workers Int'l. Ass'n Local Union No. 27, AFL-CIO v. E.P. Donnelly, Inc.*, 673 F. Supp. 2d 313, 328 (D.N.J. 2009) ("Walking blindfolded through one's business affairs does not excuse the ensuing collision.").

Plaintiff was advised that the agreement was a condition of her employment before she could even begin to complete her application, within the application itself, and again before beginning the onboarding process.  *See id.* at 50-51.  Plaintiff signed the Agreement.  She was

invited to view the Agreement prior to signing it, and provided with multiple opportunities to print and retain the agreement to which she affixed her signature. She has made a clear and unmistakable waiver of her right to proceed with her claims in this forum, and her claims must be dismissed.

**B.    Plaintiff Agreed To Arbitrate Claims Arising From Her Employment With Starbucks.**

The New Jersey Supreme Court has left no doubt that, "in New Jersey, the guiding principle governing the scope of an arbitration agreement is that 'those issues may be arbitrated which the parties have agreed shall be.'" *U.S. Auto. Ass'n*, 156 N.J. at 486-87 (internal quotations and citations omitted); *see also In re Arbitration Between Grover & Universal Underwriters Ins. Co.*, 80 N.J. 221, 229 (1979) (explaining that when determining the arbitrability of a dispute, "[t]he answer is found simply by analyzing what the parties have agreed should be submitted to arbitration"). Despite how a plaintiff may try to characterize her claims, New Jersey courts have made it clear that the "[a]rbitrability of a particular claim depends not upon the characterization of the claim, but upon the relationship of the claim to the subject matter of the arbitration clause." *Jansen v. Salomon Smith Barney*, 342 N.J. Super. 254, 258 (App. Div.), *certif. denied*, 170 N.J. 205 (2001) (internal quotations and citations omitted). Moreover, New Jersey's well-settled policy favoring arbitration requires that "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id.* at 258 (citations omitted).

Here, the allegations in the Complaint arise directly from Plaintiff's employment with Starbucks, and as such, are subject to arbitration. The Arbitration Agreement states in unambiguous terms that the parties "agree to use binding individual arbitration to resolve any 'Covered Claims' that arise between [the employee] and Starbucks." (Kennedy Decl., Ex. G at p. 1.) It explicitly states that "Covered Claims" within the coverage of the Arbitration Agreement include "those brought under any statute, local ordinance, or common law relating to [the

employee'] employment, including those concerning . . . discrimination . . . accommodations or termination of employment." (Kennedy Decl., Ex. G at p. 1.) Plaintiff's Amended Complaint alleges religious discrimination based on her termination and an alleged failure to accommodate, which are precisely the claims covered by the Arbitration Agreement. (*See* Kennedy Decl., Ex. G at p. 1; Am. Compl., Dkt. No. 6.) Accordingly, the Court should compel arbitration.

III.   **Since Plaintiff Has Agreed To Arbitrate Her Claims, The Court Should Compel Arbitration And Dismiss The Complaint Or Stay The Action.**

Section 4 of the FAA empowers the Court to compel arbitration when one party has failed or refused to comply with the arbitration agreement. 9 U.S.C. § 4. Because all of Plaintiff's claims are covered by the Arbitration Agreement, the Court should dismiss this lawsuit. *See Hoffman v, Fidelity & Deposit Co.,* 734 F. Supp. 192 (D.N.J. 1990) (dismissing the action because "all issues relating to this litigation must be arbitrated [and] no issues remain before the court"); *see also Czormoor v. T-Mobile USA, Inc.*, 354 F. App'x 972, 975 (6th Cir. 2009) ("supporting dismissal of the case when all of the issues raised in the district court must be submitted to arbitration."); *Alford* v. *Dean Witter Reynolds, Inc.,* 975 F.2d 1161, 1164 (5th Cir. 1992) (holding that district court may dismiss, rather than stay, a case where all of the claims must be submitted to arbitration).

Alternatively, this case should be stayed pending arbitration. Under the FAA, if a party brings an action "referable to arbitration," the court "shall on application of one of the parties stay the trial of action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant Defendant's Motion, compel the parties to arbitration, and dismiss the Amended Complaint in its entirety because Plaintiff executed and assented to a valid and enforceable arbitration agreement and Plaintiff's allegations in the Amended Complaint fall clearly within the scope of the arbitration agreement.  In the alternative, this case should be stayed pending mandatory arbitration.

Respectfully submitted,

*/s/ Rachel Seaton Brownell*

Rachel Seaton Brownell
Jillian L. Szymonifka
**LITTLER MENDELSON, P.C.**
Attorneys for Defendant

Dated: March 10, 2021

4820-6486-1919.5 055187.1163

17